## Henry Schnuth v. O. E. Aber, Appellant.

*Master and servant — Contract — Discharge of servant — Charge of the court.*

In an action by a servant against his master after an alleged wrongful discharge, to recover wages due to the end of the term of employment, where the defendant alleges a mutual agreement to terminate the contract, the court commits no error in charging that if there was a mutual agreement to terminate the contract, plaintiff could only recover his wages to the date when he stopped working, but that if he was wrongfully discharged, and was prevented by defendant from performing his contract and was ready and willing to do the work, he could recover what he would have earned under the contract had he been permitted to perform the services thereunder.

Argued May 20, 1899. · Appeal, No. 228, April T., 1899, by defendant, from judgment of C. P. Beaver Co., June T., 1897, No. 230, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Assumpsit for wages. Before WILLSON, P. J.

The facts appear in the charge of the court below which was as follows:

The plaintiff seeks to recover from the defendant damages for a breach of contract which reads as follows:

" Article of Agreement made this 9th day of March, 1896, between O. E. Aber of Industry, Pa., party of the first part, and Henry Schnuth, of Pittsburg, Pa., party of the second part, Witnesseth : That Henry Schnuth of the second part agrees to attend to the milking and have it done in good time by himself and his wife, and any other help that is needed for the milking is to be furnished by the said second party, the said Schnuth to cool and care for the milk in the best possible way and bring the same to station for shipment in time for any train that we may ship on; also, to take good care of the cattle and all stock in his care, and the balance of said Schnuth's time after caring for the stock in a careful and right manner, is to be spent on the farm at whatever work he is directed to do by first party; Schnuth to have privilege to keep two hogs, and chickens not to exceed fifty in number, hogs and chickens to be fed by Schnuth and not allowed to destroy anything grown on farm ; and for services the said Schnuth is to receive from the said O. E. Aber three hundred and no 100 dollars for one year's services, commencing from the 18th day of March, 1896, and is also to have his house rent free, fruit grown on farm for his family use, milk for table use, team to haul his own coal and truck or garden patch all free; the said Schnuth to have any goods out of the store of O. E. Aber he may want from time to time as it may be due him, and at the expiration of the year to have the balance, if any due him, in cash.   In witness whereof we have hereto set our hands and seals this ninth day of March, 1896.

" O. E. ABER,          [Seal.]

" HENRY SCHNUTH.  [Seal.]

The plaintiff and defendant entered into this agreement, as it appears, on March 9, 1896, and the plaintiff went to work under this article of agreement and into possession of the house upon the premises on March 18 following.

The relation existing between the plaintiff and defendant in this case under this contract is that of master and servant, the plaintiff agreeing, as it appears from the contract, for a certain consideration in money and the use of the house and other things therein contained, to attend to the cows of the defendant and do other work upon the farm under the direction of the defendant.

The plaintiff alleges that he went to work under the contract and that he performed all his duties thereunder, and continued in the performance of those duties until he was discharged by the defendant on or about October 1, 1896.

The contract under which the plaintiff claims to recover is an entire contract. That is, the hiring was for a fixed time and the relation of master and servant existing between them could not be lawfully terminated by either of the parties without cause. If the plaintiff were discharged without cause, and prevented from performing his undertakings and receiving the compensation therein provided, then the plaintiff could recover in damages what he would have received had his services not been dispensed with and he continued in the employment under the agreement. The plaintiff alleges that he complied with all the terms and conditions of his service, that he was told to quit by the defendant some time about the middle of September, 1896, and the services were to cease on October 1, following; that upon that date another man by the name of Ed. Ward assumed charge, and that he, Schnuth, subsequently refused to assist to do the work of milking when so requested by Ward, for the reason that he did not think he had the right, having been discharged, and for the further reason that the tools were locked up. And he further alleges that at the time in September when he alleged he was discharged he protested that his time would not be up until the end of the year.

This, in brief, gentlemen, is the position of the plaintiff, alleging compliance with the terms of the contract, and that the defendant discharged him without cause.

It might be proper to say here that as a rule of law faithful service is a condition precedent to a recovery, or to the right to wages; and when there is any misconduct, conduct inconsistent with the relation of master and servant, the former has the undoubted right at any time to put an end to such a contract. [The relation of the plaintiff to the defendant in this case was much the same as that of a farm-hand upon a farm, with this distinction, that he was there in the possession of the premises and not immediately under the owner of the premises.] [10] He was under the direction of the defendant, and if he performed that which he undertook to do in his contract, that which he was directed to do, all that which he undertook to do

in the contract, for the defendant, in a proper manner, whicn he alleges, then he would have a right to recover in this case that which he would have earned had his services not been interfered with by the defendant and he had been permitted to perform the services which he undertook.

There is another element in this case that might be referred to here, and that is as to the length of time for which the plaintiff would be entitled to recover, if you believed he performed all of the conditions of his contract. [It is a condition precedent to the right to recover in this case that the plaintiff must be at all times ready and willing to perform the terms of his contract, so that if you find that he did perform the terms of his contract up until October 1, 1896, you would have no difficulty in finding that he was entitled to his wages up until that time. But if subsequent to that time he refused to perform the services under this contract, then he would not be entitled to recover subsequent to that time, because it is a condition precedent to the right to recovery that he must hold himself in readiness to perform the conditions of his contract unless he is prevented from so doing by the other party.] [11]

On the part of the defendant it is alleged that the plaintiff refused to perform his part of the contract in a proper manner. It is alleged that upon the first day that he went there he took exceptions to the manner in which he was directed to feed the cattle. Mr. Aber testified that that necessitated the purchasing of several tons of hay in addition to that which he already had, this being in the middle of March, in order to provide feed for his cattle from that time until spring, and that by reason of the plaintiff's noncompliance with his instructions. However that may be his declarations upon that date are introduced as corroborative of that which was testified to by the defendant as to plaintiff's conduct in his relations with him subsequently thereto, as showing the mind of the plaintiff in the premises.

The plaintiff alleges, and also his wife, that no hay was brought upon the farm. These are questions which, of course, you must take into consideration.

The defendant further alleges that the plaintiff was to take care of the horses and cattle, that he was directed to keep them separate but that he persistently refused to do so, and that he used vile and profane language to him when the mat-

ter was discussed, at one time, at least, in the grainary; that
the cattle and horses were permitted to run together instead
of being kept separate; that the fences were kept so that the
horses and cattle were permitted to roam in the oats and corn-
field; that the spring house door was often unlocked which he
had directed to be kept locked; that this time the plaintiff be-
came angry with him when he protested against his leaving the
spring house door unlocked, the staple having been pulled out
of the door post.  It appears that this time a grain of oats had
gotten into the key and he had pulled the staple out instead of
taking the grain of oats out of the key.  We are not giving
you the exact language, nor would it be at all possible, per-
haps, in this case, to quote the language of the witnesses with
any exactness, unless it is read literally from the stenographer's
notes of the testimony.  The defendant alleges that the plain-
tiff tried to throw him in the spring.  The plaintiff denies that
anything occurred further than that they had some words.  Mrs.
Schnuth testified that from an upstair's window of the house she
saw a difficulty at the spring house, but that when they came
up to the farmhouse everything was peaceable, and that she
furnished Mr. Aber a knitting needle and he took the grain of
oats out of the key.  The defendant further alleges that at
the farm, perhaps in June (I do not recall the exact time),
that the plaintiff caught him by the back of the neck and
struck him twice, at least; that this time he was calling his
attention to the fact that the horses and cattle were running
together, and in the grain, and that, perhaps, at that time
some money matters were mentioned.  It matters not, gen-
tlemen, what was mentioned at that time, so that it was not
something that would provoke and give the plaintiff reason-
able cause for making an assault upon his employer; the as-
sault would be inconsistent with the relation of master and
servant; and if it were true, as the defendant alleges, that he
had discharged him then and there, he would have been doing
what would be perfectly right and proper in the premises, un-
less the assault was provoked by the defendant himself, and
unjustly.  He further alleges that at the store subsequent to
this time that he again demanded money, and that words en-
sued, and that he seized a pruning knife and an ax, but was
prevented by Mr. Roberts, who was present, from doing any-

thing. Whether or not he had any intention of injuring the defendant is left for you to infer from his conduct in this matter, but his conduct in this matter, at least if it were unprovoked, would be reprehensible, and would be sufficient cause for a man discharging one in his employment.

The plaintiff denies that any such thing occurred, that there was any ax or any pruning knife there, but there was a stick that he had hold of perhaps or reached for, but that he did not have any intention of hitting the defendant. These matters according to the defendant run along, and the unpleasant relations existing between them, by reason, as the defendant alleges, of the different circumstances of the trouble about the cattle and the horses, and the oats and the corn, until about the middle of September when some difficulty arose, when the plaintiff asked assistance in cutting some fodder corn, according to the defendant's story that the plaintiff refused to cut the corn unless he had some assistance. Then it was, the defendant alleges, that he told him he could quit, and that he could quit on the first day of October, that he would get another man to take his place. He alleges that the plaintiff assented to this, and in corroboration of this position he called a number of witnesses, the number I do not now recall, but you will remember their testimony, who testified that the plaintiff asserted at different times that he would work no more for the defendant. The plaintiff denies that he assented to his discharge at all, but insists that he protested at the time that his contract would not expire until March 18 following.

Now, gentlemen, if you believe the defendant that the plaintiff conducted himself upon this farm in this manner, that he, against the instructions of the defendant, persistently permitted the horses and cattle to run together, that he permitted them at various times to trample down the oats and the corn after having been instructed to remedy this matter, then there was sufficient cause in this case for the defendant to discharge the plaintiff, because, as we have heretofore said, faithful services on the part of the plaintiff, on the part of the servant, or of an employee, is a condition precedent to the right of wages. [One may not hire a man to work upon his farm and have him wilfully disobeyed or neglecting to do that which he is told to do, and permitting his crops to be destroyed, or damaged, the result

of the disobedience of orders, whether that damage is actual or not, or whether it might result from such conduct; in such case there are just grounds for the discharge of such an employee. But we have on the part of the plaintiff these matters all denied, so that you have a square issue of fact from the evidence in this case which you must determine under all the evidence both for the plaintiff and the defendant.] [12]

We would say that perhaps the first question for your consideration is, was the plaintiff discharged on October 1, 1896. If you so find, and if you believe those matters which have been set up by the defendant, then you will find that the defendant had the right, and just cause, to discharge the plaintiff, and in that event the plaintiff cannot recover in this action. When one employs another and pays him compensation therefor he is entitled to the ordinary, to the best services that the employee can give; the degree of services of course is the best that the person employed in the circumstances in which he is placed can perform, and more particularly is faithfulness of services required. We say to you that if you find that the plaintiff was discharged at this time, and for just cause, then he cannot recover in this action.

But there is another phase of the case, if you should find that the defendant discharged the plaintiff and without just cause, at this time, then you must find whether or not the plaintiff assented to the discharge; and you will recall the testimony of the plaintiff and the defendant as to what occurred in the middle of September, 1896. The defendant alleges that he told him to quit, and that at a future date, and at that time he would furnish another man; he alleges that the plaintiff did not dissent from that, nor refuse, but that he acquiesced in it. The plaintiff denies that, saying that he called attention to, or protested at that time that his term of service was not up. You must determine, gentlemen, if you come to the consideration of this portion of the case, whom you will believe, and if the plaintiff assented to the discharge then he cannot recover for anything more than the amount of his services up until October 1, 1896, because if there was a mutual agreement between the defendant and the plaintiff that the services were to terminate on October 1, 1896, the defendant would be bound to pay for the services up until that time, which would be the

difference between that which he had paid, $95.53, and the amount of services counting at $25.00 per month up to the time of the discharge.  But if you should determine that the plaintiff was discharged without cause and was prevented from performing his services, if the plaintiff were discharged without cause and he was prevented by the defendant from performing the conditions of his contract, his undertakings under the contract, then he would have the right to recover, and the measure of his damages would be that which he would have earned under the contract had he been permitted to have performed the services thereunder, the value of the house rent from that time until the end of the year, and the milk.

[As to this question, it is alleged on the part of the defendant and also upon the part of the plaintiff, that there was a request on the part of Ward in behalf of Aber, for the plaintiff to assist Ward in the milking.  Now, as we have said before, this plaintiff is bound to, as he alleges he was, be ready and willing to perform that which he undertook to perform under the contract, and if subsequent to October 1, 1896, while he was still in the house of the defendant and receiving a portion of the consideration, and as he alleges that he claimed then and does now claim that he was entitled to compensation for these services if he were prevented by the defendant from performing them, if he were requested it was his duty to perform such services as he was directed to perform, and if he did not then he would be precluded from recovering for any services after the time they allege he refused to perform the services.] [13]

[Upon this question of refusal to perform work there is some testimony, which has been referred to in part by the court, by the plaintiff giving his reasons why he did not perform these services, that the tools were locked up and that he thought he did not have the right to perform them.  The defendant introduced some testimony in which it is alleged that the plaintiff said he would not milk another blank cow for the defendant, that he could make more money sitting in the house and doing nothing, or words to that effect.  This was offered to contradict the plaintiff when he said that he was ready and willing to perform his part of the agreement, perform his undertakings under the contract under the directions of the defendant; and if he were not ready and willing of course he could not recover even under this branch of the case.] [15]

[Now as to the consideration of the case, as the court has indicated you will take up the first question, which, if you determine, as the court has indicated, which if you determine in one way will settle the case and you need go no further, that is, was the plaintiff discharged for just cause? If he was discharged for just cause, then he could not recover, and you need go no further in the case; your verdict would be for the defendant, and you can so return it. If he were not discharged for just cause, and there was a mutual agreement to end the service, he could not recover any more than the balance due him up until that time. The third proposition is, if he were discharged without cause, and he did not acquiesce in that, but was ready and willing to perform the conditions of his contract at all times until prevented by the defendant, and that would be, I believe, at any time between October 1 and October 24, because at that time the goods of the plaintiff were removed from the premises, would he thereby be hindered from doing that which was required of him under the contract? If he was ready and willing to perform the conditions of the contract, and was discharged without just cause, then he would be entitled to recover.] [16]

In considering this case it is your duty not to consider who the parties are; you must consider the case under the law and the evidence. It matters not who is plaintiff or who is defendant. Your sworn duty is to determine the case and render a verdict in accordance with the evidence. You are not to be influenced by sympathy nor hatred, nor by any feeling of prejudice which any of you might have. [In determining the facts of the case you will be governed by the weight or preponderance of the evidence, and we will say that weight or preponderance does not always consist in numbers but in the credibility which you attach to the testimony of a witness or witnesses, and this credibility is for you to determine where there is a contradiction of testimony.] [17] You are not bound to believe any witness if the circumstances and the testimony of the witness are unreasonable and contradictory. In considering the testimony of witnesses you will take into consideration their manner and appearance on the stand, the manner in which they testify in the light of all the circumstances in the case, considering also the interest of the parties in the result of your finding.

Plaintiff's points and the answers thereto among others were as follows :

[3. If the jury believe that the defendant fixed a time for the dismissal of the plaintiff, and when such time arrived the defendant did put another man in Schnuth's place, who took possession of the milkcans, stables and other tools and the wagon with which Schnuth had been working, and the plaintiff had been informed by the defendant that his services were no longer required, these facts constituted a discharge of the plaintiff by the defendant.  *Answer :* Affirmed.] [3]

[5. If the jury believe that the plaintiff was prevented and hindered from carrying out his part of the contract by the interference of the defendant in putting another man in his place, the fault would be that of the defendant.  *Answer :* Affirmed.] [4]

Defendant's points and the answers thereto among others were as follows :

[2. If the jury find from the evidence that the plaintiff did not perform his duties under the contract, or refused to perform them when requested by the defendant, he cannot recover in this case.  *Answer :* Affirmed, if discharged for that reason.] [5]

[4. If Schnuth wished to recover under this contract or intended to claim compensation thereunder, he was bound in law to be ready and willing at all reasonable times to perform his duties thereunder, or such portions of them as Aber requested. *Answer :* That is affirmed, unless he was prevented from so doing by the defendant himself.] [6]

[5. He could not decline or refuse to perform his duties under the contract, or decline or refuse to perform any portion of them, and then recover.  *Answer :* That is affirmed, calling the attention of the jury to the question of recovery for services subsequent to that time as explained in the general charge.] [7]

[7. The plaintiff having stated that he quit work on or about October 1, 1896, because Aber told him to quit, and also having stated that he did not remonstrate or object, if the jury so find, he must be held to have acquiesced in the termination of the contract, and therefore cannot recover.  *Answer :* I have instructed the jury as to that.   The point is refused.] [8]

Verdict and judgment for plaintiff for $266.22.   Defendant appealed.

*Errors assigned* were (1) that the verdict and judgment thereon were erroneous; (2) refusal of defendant's motion for nonsuit; (3–8, 10–17) above instructions, quoting them; (9) that the charge as a whole was inadequate.

*D. A. Nelson*, for appellant.—This was an entire contract and must be considered as a whole, and under the ruling in Martin v. Schoenberger, 8 W. & S. 367, Gillespie Tool Co. v. Wilson, 123 Pa. 19, Hartman v. Meighan, 171 Pa. 46, and Fisher v. Mershon, 9 Pa. Superior Ct. 238, the burden of proof was upon the plaintiff to show that he had performed his part of the agreement, and when he quit work it was his duty to show that he was prevented from performing his duties.

*A. P. Marshall*, with him *R. S. Holt*, for appellee.

OPINION BY W. D. PORTER, J., March 21, 1900:

The plaintiff was employed by the defendant, under a written contract, to work upon and manage a dairy farm in the county of Beaver, for the period of one year, beginning March 18, 1896, for the compensation of $300 per year, the use of the house on the farm for himself and family, and certain incidental privileges as to the right to use a part of the farm and keep certain stock. The plaintiff brought this action to recover for an alleged breach of this agreement. Plaintiff alleged that he was discharged by the defendant without cause on the 1st day of October, 1896, and that on the 24th day of that month, during the absence of himself and wife from the farm, the defendant removed his household goods and other property from the farm without his consent, and subsequently refused to allow him to occupy any part of the premises, and further, that he had been ready at all times during the continuance of the term of this service to perform the duties for which he had contracted.

The defendant alleged that plaintiff had been guilty of misconduct in the discharge of his duties; that he had refused to perform the services for which he had contracted; that difficulties and disagreements had arisen between them, and that it had been mutually agreed that the contract should be terminated, and the plaintiff leave the premises on the 1st day of October, 1896. Defendant also called a witness to testify that after the

1st day of October, 1896, the plaintiff had refused to perform the services stipulated for in his contract.

Testimony was offered by the parties in support of their respective contentions, and questions of fact were raised which were for the determination of the jury alone.

The first and second specifications of error are as to matters not assignable for error. The other fifteen specifications of error assign, respectively, disjointed parts of the charge and answers to points, which do not fairly present the charge as a whole. Some of the parts of the charge and answers to points assigned for error refer to the effect of certain actions of the defendant or of the plaintiff at one stage of their dealings, while other assignments are as to the effect of certain actions of the parties at another stage of their dealings. There was no dispute as to the fact that the defendant did remove the household goods of the plaintiff from the premises, and directed the plaintiff to leave the farm sometime in October, 1896. The point in dispute was whether the plaintiff had been discharged by the defendant, or the contract had been terminated by mutual consent. If this question of fact was by the jury determined in favor of the plaintiff, it then became necessary to determine whether the discharge was for good cause, and, if not for good cause, whether the defendant continued ready and willing to perform his part of the agreement. The charge of the court submitted these questions to the jury in a manner which could not have been misunderstood, and may be summed up as follows : " If the plaintiff assented to the discharge, then he cannot recover for anything more than the amount of his services up until October 1, 1896, because if there was a mutual agreement between the defendant and the plaintiff that the services were to' terminate on the 1st of October, 1896, the defendant would be bound to pay for the services up until that time. . . . Was the plaintiff discharged on the 1st of October, 1896 ? If you so find, and if you believe those matters which have been set up by the defendant, then you will find that the defendant had the right and just cause to discharge the plaintiff, and in that event the plaintiff cannot recover in this action. When one employs another and pays him compensation therefor, he is entitled to the ordinary or best services that the employee can give ; the degree of services, of course, is the best that the person employed in the

circumstances in which he is placed can perform, and more particularly in the faithfulness of services required. We say to you that if you find that the plaintiff was discharged at this time and for just cause, then he cannot recover in this action. . . . But if you should determine that the plaintiff was discharged without cause and was prevented from performing his services—if the plaintiff was discharged without cause and he was prevented by the defendant from performing the conditions of his contract, his undertakings under the contract, then he would have the right to recover, and the measure of his damages would be that which he would have earned under the contract had he been permitted to have performed the services thereunder. . . . This plaintiff was bound to, as he alleges he was, be ready and willing to perform that which he undertook to perform under the contract, and if subsequent to October 1, 1896, while he was still in the house of defendant and receiving a portion of the consideration, and as he alleges that he claimed then and does now claim that he was entitled to compensation for these services, if he were prevented by the defendant from performing them, if he were requested, it was his duty to perform such services as he was directed to perform, and if he did not, then he would be precluded from recovering for any services after the time they allege he refused to perform the services."

The court, in instructing the jury as to the effect of a discharge without cause and the duty of the party so discharged to hold himself ready to perform in case he was called upon to perform, referred to certain testimony produced by the defendant and said: "This was offered to contradict the plaintiff when he said that he was ready and willing to perform his part of the agreement, perform his undertakings under the contract under the directions of the defendant, and if he were not ready and willing, of course he could not recover even under this branch of the case."

The charge of the learned court below was an adequate presentation of the law and could not have been misunderstood. The questions of fact were to be determined by the jury and to have withdrawn them from the consideration of the jury would have been manifest error. We find no error in the record and all the specifications are overruled.

Judgment affirmed.